UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC, | § § § § | |
| Plaintiff, | § | |
| v. | § § | Civil Action No. 2:15-cv-00183-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | § § § § § § | JURY TRIAL REQUESTED |
| Defendants. | § | |

**PLAINTIFF MTEL'S OPPOSITION TO SAMSUNG'S MOTION TO DISMISS (D.I. 22) MTEL'S CLAIMS OF INFRINGEMENT OF THE '946 PATENT**

# **TABLE OF CONTENTS**

I. *MTEL I* TRIED DIFFERENT PRODUCTS THAN THOSE ACCUSED IN *MTEL II*, AND *MTEL I* TRIED DIFFERENT PATENT CLAIMS. ...........................................................2

    A.    Samsung Cannot Prove That the Products Tried In *MTel I* Are Essentially the Same As the Products Accused Here. ...........................................................2

    B.    *MTel I* Involved only Apparatus Claim 1; Method Claim 8 Asserted in *MTel II* Raises Different Issues. ...........................................................5

II. SAMSUNG CANNOT MEET ITS BURDEN OF PROOF ON ANY OF ITS THEORIES OF PRECLUSION. ...........................................................6

    A.    Federal Circuit Law Bars Samsung's Defense of Claim Preclusion. ...........................................................6

    B.    The *MTel I* Trial Did Not Involve Method Claim 8 of the '946 Patent, therefore Issue Preclusion Cannot Apply. ...........................................................10

    C.    Samsung Cannot Show That the Kessler Doctrine Applies ...........................................................12

III. MTEL'S MOTION FOR A NEW TRIAL AND SAMSUNG'S MOTION TO DISMISS SHOULD BE RESOLVED TOGETHER IN THIS LITIGATION. ...........................................................15

IV. CONCLUSION ...........................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Acumed LLC v. Stryker Corp.*,
    525 F.3d 1319 (Fed. Cir. 2008) ................................................................................... passim

*Adobe Sys. v. Wowza Media Sys., LLC*,
    2014 U.S. Dist. LEXIS 152471 (N.D. Cal. Oct. 27, 2014) ........................................................ 12

*Amicus, Inc. v. Post-Tension of Tex., Inc.*,
    686 F. Supp. 583 (S.D. Tex. 1987) .................................................................................. 6

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
    672 F.3d 1335 (Fed. Cir. 2012) ........................................................................... 6, 7, 8, 10

*Brain Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014) ................................................................................. passim

*Cordis Corp. v. Boston Sci. Corp.*,
    635 F. Supp. 2d 361 (D. Del. 2009) ................................................................................ 9

*Erie RR. v. Tompkins*,
    304 U.S. 64 (1934) (Brandeis, J.) ................................................................................ 14

*Foster v. Hallco Mfg. Co.*,
    947 F.2d 469 (Fed. Cir. 1991) ............................................................................... 8, 9, 10

*Gillig v. Nike, Inc.*,
    602 F.3d 1354 (Fed. Cir. 2010) .................................................................................... 7

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
    370 F.3d 1131 (Fed. Cir. 2004) ................................................................................... 10

*Kessler v. Eldred*,
    206 U.S. 285 (1907) ........................................................................................... 12, 14

*Lawlor v. Nat'l Screen Serv. Corp.*,
    349 U.S. 322 (1955) ............................................................................................... 8

*Meza v. Gen. Battery Corp.*,
    908 F.2d 1262 (5th Cir. 1990) .................................................................................... 11

*MGA, Inc. v. General Motors Corp.*,
    827 F.2d 729 (Fed. Cir. 1987) .................................................................................. 12, 13

*Mobile Telecommunications Technologies, LLC v. Samsung Telecommunications
    America, Inc.*,
    Case 2:13-CV-259-RSP (E.D. Tex.) ................................................................................. 1

*Morgan v. Covington Twp.*,
   648 F.3d 172 (3d Cir. 2011) ................................................................................................8

*Nilesh Enters., Inc. v. Lawyers Title Ins. Corp.*,
   No. SA-08-CV-661-XR, 2009 U.S. Dist. LEXIS 84766 (W.D. Tex. Sept. 16, 2009) ..............6

*Nystrom v. Trex Co.*,
   580 F.3d 1281 (Fed. Cir. 2009) ...............................................................................6, 8, 9, 10

*Plastic Container Corp. v. Cont'l Plastics of Okla.*,
   607 F.2d 885 (10th Cir. 1979) ............................................................................................11

*Repligen Corp. v. Bristol-Myers Squibb Co.*,
   No. 2-06-CV-4, 2006 U.S. Dist. LEXIS 50384 (E.D. Tex. July 20, 2006) ............................11

*Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*,
   232 U.S. 413 (U.S. 1914) ...................................................................................................12

*Smith v. Bayer Corp.*,
   131 S. Ct. 2368 (2011) .......................................................................................................11

*Yingbin-Nature (Guangdong) Wood Indus. Co. v. ITC*,
   535 F.3d 1322 (Fed. Cir. 2008) ..........................................................................................11

This Court should deny Samsung's Motion to Dismiss and should strike Samsung's defenses of preclusion: issue preclusion, claim preclusion, and the Kessler doctrine.

This suit (*MTel II*) asserts infringement of Claim 8 of the '946 Patent, a method claim, whereas *MTel I*[1] tried only Claim 1 of the '946 Patent, an apparatus claim. Thus, there can be no "issue preclusion" unless and until Samsung proves Claim 8 raises no material issues of fact that were not actually and necessarily decided in *MTel I*.

This suit alleges infringement of the current Samsung "Galaxy" (including the "S6") series of smartphones, tablets and phablets. Samsung markets those devices under the Note, PRO, and Tab brands. Those Samsung mobile devices run version 5 (Lollipop) of the Android operating system or another operating system with an email or messaging application that was not involved in *MTel I*. *MTel II* accuses only products that came into existence after *MTel I*. Thus, there can be no "claim preclusion" unless and until Samsung proves that the products accused here are "essentially the same" as those found not to infringe in *MTel I*. Because Claim 8 is a method claim, that inquiry must include determination that the new products perform essentially the same functionalities as those found not to infringe in *MTel I*.

This suit alleges infringement by new products and in particular new applications ("apps") including Samsung's new email application. This suit therefore does not merely involve downstream customers of specific products found in *MTel I* not to have infringed. The Kessler Doctrine cannot apply unless and until Samsung proves that the products accused here are "essentially the same" as those found not to infringe in *MTel I*.

Because Samsung bears the burden of proof on each of its preclusion theories, the most appropriate vehicle for resolution here would be to pull into *MTel II* MTel's RENEWED MOTION

---

[1] *Mobile Telecommunications Technologies, LLC v. Samsung Telecommunications America, Inc.*, Case 2:13-CV-259-RSP (E.D. Tex.) (*MTel I*).

FOR JUDGMENT AS A MATTER OF LAW REGARDING INFRINGEMENT AND ALTERNATIVE MOTION FOR NEW TRIAL[2] that currently pends in *MTel I*.

## I.    *MTEL I* TRIED DIFFERENT PRODUCTS THAN THOSE ACCUSED IN *MTEL II*, AND *MTEL I* TRIED DIFFERENT PATENT CLAIMS.

### A.    Samsung Cannot Prove That the Products Tried In *MTel I* Are Essentially the Same As the Products Accused Here.

Samsung markets its Lollipop operating system as "the largest and most ambitious release for Android yet." (https://developer.android.com/about/versions/lollipop.html, Exh. 1 to MTel's '946 P.R. 3 Claim Chart for the '946 Patent).[3]  This expansive redesign includes several changes to how the user interacts with the accused e-mail application.  Those changes infringe the claims of the '946 Patent.  For example, screenshots reproduced below demonstrate how users specify that they desire receipt of the attachment portion:




---

[2]    Case 2:13-cv-00259-RSP, D.I. 126 (01/15/15).

[3]    "Android is developed by Google Inc. and the Open Handset Alliance." https://developer.android.com/legal.html. Samsung is a member of the Open Handset Alliance http://www.openhandsetalliance.com/oha_members.html

[4]    http://forums.androidcentral.com/samsung-galaxy-note-4/471211-galaxy-note-4-stock-email-app-previewing-attachments.html

The screenshot on the left shows a device that does not have the Lollipop (Android version 5) operating system; whereas the screenshot on the right shows a device that does have the Lollipop system.  When the user of a newly released Samsung device running the Lollipop OS chooses to view the list of available attachments, the user is shown the screen below:



Thus, Samsung devices operating the Lollipop Operating System ("Lollipop OS") allow the user to specify a portion of the message for retransmission (i.e., here a single patent) in ways different from those of user interface components of devices that do not operate the Lollipop OS.

Additionally, *MTel II* accuses for the first time applications that allow for selectively requesting retransmission such as Facebook, Twitter, Instagram, and Google Play services:

> user selectable retransmission requests may be implemented in applications, including Facebook, Twitter, Instagram, and similar applications, which implement Android connectivity frameworks (*e.g.*, Volley, GCM) and user interface modules, objects, and components.

'946 Claim Chart at 11.

---

5  MTel's '946 Claim Chart at 7.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'                                                                    3
MOTION TO DISMISS PLAINTIFF'S CLAIMS OF INFRINGEMENT OF THE '946 PATENT

all applications that allow for the user of the mobile unit to selectively request retransmission of message portions, including but not limited to WhatsApp, Skype, SnapChat, Facebook Messenger, Twitter, Go SMS Pro, IM+, Viber, Google Play services, etc.). Samsung encourages its users to download such applications by for example providing instructions: **[FAQs] Smart Phone : How do I get the Facebook Messenger app on my Samsung Galaxy device?**

'946 Claim Chart at 2.

Upon actuation of the switch, the software pertaining to either the specific application (e.g., the E-mail, Newsstand, Twitter, Facebook applications) or the Android operating system interprets the user's action (e.g., interprets the user's "click" to download the attachment or open the article). This corresponds to the claim limitation of receiving an indication that the user desires retransmission of the portion of the displayed message that the user has specified.

'946 Claim Chart at 18.

Furthermore, MTel's '946 Patent infringement contentions accuse applications not at issue in *MTel I*.  For example, *MTel II* accuses the new Play Newsstand application that is now pre-installed on Samsung devices running the Lollipop OS.  MTel's See '946 Claim Chart at 6.



Samsung has not proven, and does not argue, that the products (applications on the Samsung devices) MTel here accuses of infringing the '946 Patent were available during the pendency of *MTel I*.  Even if the "hardware" is "essentially the same," the software is new. Rather, Samsung argues that the products are "essentially the same."  The Federal Circuit has

defined the "essentially the same" to mean that "[a]ccused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (*citing Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 480 (Fed. Cir. 1991)). As shown above, however, the changes Samsung made to the Lollipop OS as implemented on Samsung Galaxy devices are directly related to the limitations the claims of the '946 Patent.

**B.** ***MTel I* Involved only Apparatus Claim 1; Method Claim 8 Asserted in *MTel II* Raises Different Issues.**

Apparatus Claim 1 of the '946 Patent asserted in *MTel I* recites:

> 1. A mobile unit for transmitting and receiving radio frequency signals to and from a communications network comprising:
> means for receiving a radio frequency message from the network;
> a displaying of displaying said message;
> a switch actuatable to specify a portion of the displayed message for which a user desires retransmission from the communications network;
> means for transmitting, only upon actuation of the switch, a signal to the communications network requesting retransmission of said specified portion of said message; and
> means for receiving said specified portion retransmitted from the communications network and for displaying the received specified portion on the display.

'946 Patent col. 31, line 63 to col. 32, line 12 (hereafter cited as "'946 Patent 31:63-32:12").

Method Claim 8 of the '946 Patent asserted in *MTel II* recites:

> 8. A method for receiving and transmitting messages at a mobile unit, comprising the steps of:
> receiving at the mobile unit a radio frequency message;
> displaying said message on the mobile unit;
> receiving an indication of a portion of the displayed message for which a user desires retransmission;
> transmitting only upon receipt of the indication, a signal requesting retransmission of said indicated portion of said message;
> receiving a retransmission of said indicated portion; and
> displaying the received retransmission of said indicated portion on the mobile unit.

'946 Patent 32:47-60. For example, Claim 8 does not recite a switch as does Claim 1, but does recite "receiving an indication of a portion," which Claim 1 does not. Claim 1 recites "only upon

actuation of the switch," which Claim 8 does not.

## II. SAMSUNG CANNOT MEET ITS BURDEN OF PROOF ON ANY OF ITS THEORIES OF PRECLUSION.

### A. Federal Circuit Law Bars Samsung's Defense of Claim Preclusion.

The burden of showing entitlement to the defense of collateral estoppel rests entirely with Samsung.[6] *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1053 (Fed. Cir. 2014) ("For claim preclusion to apply in a patent case, the alleged infringer must demonstrate that the accused product or process is 'essentially the same' as the accused product or process in the first litigation. *Nystrom*, 580 F.3d at 1285 (*quoting Foster*, 947 F.2d at 480).").[7]

Moreover, two recent, controlling Federal Circuit decisions, one relied upon by Samsung, squarely dispose of Samsung's claim preclusion defense. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) and *Brain Life, LLC*, 746 F.3d 1045 (which Samsung relies upon). In patent cases, claim preclusion "encompass[es] only the particular infringing acts or products that are accused in the first action." *Aspex*, 672 F.3d at 1343. Samsung has not made that required showing. Each sale of an accused product is a discrete infringing act and is thus akin to "discrete tortious" conduct. *Id.* at 1342. Applying "well-settled principles," it follows that "sequential acts of infringement" that "postdate the final judgment" of a prior suit are not barred by claim preclusion. *See Brain Life*, 746 F.3d at 1054. That is true "regardless of whether the same transactional facts are present in both suits," which is to say, regardless of "whether there was a difference between the products in the two suits." *See id.*; *accord Aspex*, 672 F.3d at 1342. Thus, in both *Aspex* and *Brain Life*, the Federal Circuit held

---

[6] Thus, Samsung's contrary assertion is dead wrong: "To state a new cause of action [sic, "claim"], MTel would have to allege and prove there is a meaningful distinction in Android's newest software update." D.I. 22 at 2.

[7] *See also Amicus, Inc. v. Post-Tension of Tex., Inc.*, 686 F. Supp. 583, 589 (S.D. Tex. 1987) (proponent of claim preclusion bears the burden); *Nilesh Enters., Inc. v. Lawyers Title Ins. Corp.*, No. SA-08-CV-661-XR, 2009 U.S. Dist. LEXIS 84766, at *16 (W.D. Tex. Sept. 16, 2009) (ditto) (*citing Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971)).

that infringement claims based on conduct occurring after the judgment in the first case could not be barred by claim preclusion. *See Aspex*, 672 F.3d at 1342-44; *Brain Life*, 746 F.3d at 1054.

Products that are "made or sold during the pendency" of a prior action create discrete, after-acquired claims for patent infringement that a patentee may, but is not required to, litigate in a first suit. *See Aspex*, 672 F.3d at 1345. "A plaintiff may seek leave to file a supplemental pleading to assert those claims, but the doctrine of res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010) (internal quotation and citation omitted). If the patentee does not elect to include those claims in the initial action, claim preclusion does not bar them in a later-filed suit. *See id*. This rule applies even if "the design of those [post-filing] products is essentially the same as the design of the products that were the subjects of the" earlier-filed action. *See id*. at 1342. Thus, the Federal Circuit in *Aspex* remanded so that the parties could present evidence regarding the record in the prior action, and so that the trial court could determine whether "the parties consented to have the court adjudicate their rights as to products that were made and sold during the pendency of that case." *Id*. at 1344-45.[8]

Samsung admits that it began selling in the United States the software and equipment accused in *MTel II* after MTel initiated the *MTel I* litigation on May 22, 2013 (D.I. 22 at 5, fn. 17) including the Samsung "Galaxy" series of smartphones, tablets and phablets. Because there is no reasonable argument that *MTel I* encompassed the software and equipment accused in *MTel II*, Samsung's claim preclusion defense must fail with respect to those products.

The Federal Circuit's temporal analysis in *Aspex* and *Brain Life* is consistent with generally applicable claim preclusion law. The Supreme Court long ago explained that suits

---

[8] In *Brain Life*, the patent-holder asserted claims only for the period after judgment was entered in the first suit.

against post-judgment conduct cannot be barred by claim preclusion, even when a second suit involves "essentially the same course of wrongful conduct" litigated in an earlier case. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955); *see also Morgan v. Covington Twp.*, 648 F.3d 172, 178 (3d Cir. 2011) (claim preclusion "does not bar claims that are predicated on events that postdate the filing of the initial complaint.").

Samsung nevertheless contends that claim preclusion applies because "the same functionality litigated throughout *MTel I* and at trial is also identified in MTel's Complaint here—email or messaging." D.I. 22 at 8. Even if Samsung's statement were factually accurate (and it is not), both *Aspex* and *Brain Life* considered and rejected that standard. *See Aspex*, 672 F.3d at 1342-45; *Brain Life*, 746 F.3d at 1053-54. MTel accuses products that were sold after the *MTel I* litigation ended, it "does not matter" for purposes of claim preclusion "whether the design of those products is essentially the same as the design of the products that were the subjects" of the earlier litigation. *See Aspex*, 672 F.3d at 1342. Furthermore, *MTel I* was not about "emailing or messaging" generally, but specifically about the accused email and messaging applications that allowed for selective retransmission requests—the pre-Lollipop OS implementation of those email and messaging apps.

Samsung also relies on *Nystrom v. Trex Co.*, 580 F.3d 1281 (Fed. Cir. 2009), *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469 (Fed. Cir. 1991), and *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008). D.I. 22 at 7-10. Each of these is compatible with *Aspex* and *Brain Life*.

In *Foster*, the trial court incorrectly placed the burden on the party opposing claim preclusion to show that its claims were different than the claims in an earlier matter. *See* 947 F.2d at 480. The Federal Circuit reversed, holding that the party seeking claim preclusion has that burden. *See id*. The parties also disagreed about precisely what the party with the burden of proof was required to establish. Foster argued that claim preclusion did not apply,

because the case involved materially different accused devices; Hallco admitted that the accused devices were "somewhat different," but argued that Foster was raising the "same 'claim' of invalidity." *See id*. at 478. The Federal Circuit concluded that because an "'infringement claim,' for purposes of claim preclusion," did not "embrace[ ] more than the specific devices before the court in the first suit," claim preclusion could only apply if the products at issue in the two cases were "essentially the same." *See id*. at 479-80. Accordingly, the court remanded for a determination on essential sameness. *See id*. at 480.

*Foster* thus holds that essential sameness is a necessary condition for claim preclusion, but does not hold that it is a sufficient condition. "[N]owhere did the [*Foster*] say that res judicata will always apply in a second suit between the same parties *** on the same patent and the same device." *Cordis Corp. v. Boston Sci. Corp.*, 635 F. Supp. 2d 361, 367, 369-70 n.7 (D. Del. 2009) (plaintiff not barred from suing over products sold after the judgment in an earlier case, even though the plaintiff had "voluntarily interjected" those products into the first case).

In *Acumed*, the issue was whether claim preclusion barred a claim merely because it could have been included in a prior action. *See* 525 F.3d at 1324-26. The trial court attempted to limit *Foster* to "cases where the accused device could not have been included in the prior action." *See id.* at 1324-25. The trial court held that the patent-holder's infringement claim was barred because it could have been litigated in an earlier case, and that no comparison of products was needed. *See id.* The Federal Circuit squarely rejected that view: "two claims for patent infringement do not arise from the same transactional facts unless the accused devices in each claim are 'essentially the same.'" *Id.* at 1326. Because the party seeking to apply claim preclusion admitted that the accused products were not essentially the same, the court held that claim preclusion did not apply. *See id.* at 1326-27.

In *Nystrom*, the Federal Circuit held that a patent-holder's infringement claim was precluded where the patent-holder "would be attempting to prove infringement of the same claim

limitations as to the same features of the accused devices," because the accused products were the same as the products litigated in an earlier case. *See* 580 F.3d at 1285-86. The Federal Circuit expressly addressed *Nystrom* in *Aspex*, however, and explained that although the *Nystrom* court couched its opinion as a claim preclusion analysis, "the court applied the doctrine generally referred to as collateral estoppel or issue preclusion." *See Aspex*, 672 F.3d at 1343. Chief Judge Rader, who authored *Nystrom*, sat on the *Aspex* panel and thus agreed with that analysis.

Read harmoniously, these Federal Circuit decisions hold that claim preclusion is viable only if the party asserting it can prove that the accused products are "essentially the same" as the products litigated in an earlier case. *See Foster*, 947 F.2d at 479-80. This requirement applies whether or not the patent-holder could have asserted its claims in an earlier suit. *See Acumed*, 525 F.3d at 1324-26. <u>But even if the products are essentially the same</u>, claim preclusion still does not apply to acts of infringement that took place during the pendency of an earlier suit (and after) unless the plaintiff elected to include them in that suit. *See Aspex*, 672 F.3d at 1345. A fortiori claim preclusion does not apply at all to acts of infringement that took place after the entry of judgment in an earlier suit. *See id*. at 1342-45; *Brain Life*, 746 F.3d at 1054. Accordingly, Samsung's claim preclusion defense must fail as a matter of law. This Court should deny Samsung's Motion (D.I. 22) and strike the defense.

**B.     The *MTel I* Trial Did Not Involve Method Claim 8 of the '946 Patent, therefore Issue Preclusion Cannot Apply.**

Each claim in a patent represents a separate invention, and each patent claim asserted by MTel is a separate legal claim of infringement. *See, e.g., Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1148-49 (Fed. Cir. 2004) ("Each claim defines a separate invention, whether or not written in independent form."). Thus, the issue in this case is whether MTel is barred from asserting one or more of the patent claims against Samsung based on collateral estoppel, not whether MTel is barred from asserting the patents generally. *Brain Life*,

746 F.3d at 1055 ("Accordingly, because the '684 Patent method claims were not fully, fairly, and actually litigated to finality between these parties, issue preclusion does not stand as a bar to a second suit on those claims."); *see also Plastic Container Corp. v. Cont'l Plastics of Okla.*, 607 F.2d 885, 894 (10th Cir. 1979) (Miller J. of the CCPA sitting by designation) ("Thus, the public interest in upholding valid patents *** outweighs the public interest underlying collateral estoppel where the issue or issues in each action are not substantially identical.").

Collateral estoppel prevents the re-litigation only of facts that were actually and necessarily decided in earlier litigation. *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1273 (5th Cir. 1990); *Yingbin-Nature (Guangdong) Wood Indus. Co. v. ITC*, 535 F.3d 1322, 1334 (Fed. Cir. 2008) ("it cannot be said that 'the issue in question was actually and necessarily decided'"). But instead of comparing the actual factual findings in *MTel I* (there were none as to Claim 8) with MTel's claims in this matter, Samsung asks the Court to grant broad relief.

Indeed, whether collateral estoppel precludes MTel from asserting Claim 8 of the '946 Patent against Samsung requires Samsung to do more that make unfounded assertions, to wit, "The products in the Complaint work the same way in all material respects as those already tried." D.I. 22 at 2. Samsung must compare the specific findings (if any) from the *MTel I* to the specific claims MTel asserts here. *Brain Life, LLC*, 746 F.3d at 1055 (issue preclusion does not stand as a bar to a second suit on those method claims that were not litigated to finality in the prior suit.); *see also Repligen Corp. v. Bristol-Myers Squibb Co.*, No. 2-06-CV-4, 2006 U.S. Dist. LEXIS 50384, at *10-11 (E.D. Tex. July 20, 2006) ("As the term implies 'collateral estoppel' involves determining what facts were found in other proceedings.").[9]

---

[9] *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375-2376 (2011) (an injunction against litigating "can issue only if preclusion is clear beyond peradventure.").

### C.  Samsung Cannot Show That the Kessler Doctrine Applies.

Samsung's other preclusion notion is the so-called Kessler doctrine. *See Kessler v. Eldred*, 206 U.S. 285 (1907). Announced "in the heyday of federal mutuality of estoppel rule," the function of the equitable Kessler doctrine was to "bar[ ] a patent infringement action against a customer of a seller who ha[d] previously prevailed against the patentee because of invalidity or noninfringement of the patent." *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 733-34 (Fed. Cir. 1987).[10] "[W]hen an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the status of a noninfringing device vis-à-vis the asserted patent claims." *Brain Life*, 746 F.3d at 1057. Traditionally, a prevailing non-infringer could bring an action in equity to enjoin the patentee from suing downstream customers for purchasing specific devices that had acquired non-infringing status, a status not held by Samsung devices operating Lillipop OS. *See Kessler*, 206 U.S. at 289.

More recently, the Kessler doctrine has permitted downstream customers to invoke "defensive collateral estoppel" in patent cases without otherwise disturbing any remaining mutuality requirements. *See MGA*, 827 F.2d at 734. And in *Brain Life*, the Federal Circuit further clarified that the Kessler doctrine is not limited to a seller's customers, but can be invoked by the seller itself for devices that have acquired non-infringing status. *See* 746 F.3d at 1057-58.[11]

One dispositive point remains sharp: the Kessler doctrine applies only to particular products that have been demonstrated to be non-infringing in previous litigation, or where a patent has been found to be invalid. *See id.* at 1058 ("[B]y virtue of gaining a final judgment of

---

[10]  *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 418 (U.S. 1914) (The Kessler doctrine "went no further than to hold it to be a wrongful interference with Kessler's business to sue his customers for using and selling the lighter which Kessler had made and sold to them, ***.").

[11]  *Adobe Sys. v. Wowza Media Sys., LLC*, 2014 U.S. Dist. LEXIS 152471 at 14-15 (N.D. Cal. Oct. 27, 2014) (*Brain Life* held that the "Kessler doctrine extended that principle to devices that are "essentially the same" as those found non-infringing ***.").

noninfringement in the first suit *** the accused devices acquired a status as noninfringing devices[.]"); *MGA*, 827 F.2d at 734 ("The Kessler doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent[.]"). In other words, the Kessler doctrine does not grant protection to a particular party (e.g., a prior defendant such as Samsung) or action (e.g., selling or using), but rather to a particular good. *Elekta Inc.,* 746 F.3d at 1057 ("the specific accused device(s) acquires the 'status'"). And the Federal Circuit expressly identified what creates the protected status: "devices *** adjudged to be noninfringing with respect to the asserted claims and judgment was entered as to [those] claims ***." *Id*. at 1058.

Those Samsung devices operating the Lollipop operating system have "never acquired the status of a noninfringing device." The Galaxy S6 phone has never acquired the status of a non-infringing product. *Brain Life*, 746 F.3d at 1059 (the ERGO treatment planning system was a new product that had not acquired the status of noninfringing). Indeed, in *Brain Life*, the parties did not dispute the absence of "material differences between the currently accused products and the previously adjudicated non-infringing products as to the limitations of" the asserted claims. *Id.* at 1058. Here, Samsung has not met its burden.

Thus, the Kessler doctrine unmistakably cannot apply here. First, it is beyond dispute that *MTel I* did not conclude with a judgment of non-infringement or invalidity. Indeed, MTel filed on January 15, 2015 its pending MTEL'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING INFRINGEMENT AND ALTERNATIVE MOTION FOR NEW TRIAL.[12] Second, Samsung has not met its burden of proving that the Samsung "Galaxy" series of smartphones, tablets and phablets accused in *MTel II* are "essentially the same" as the devices found not to have infringed the

---

[12] Case 2:13-cv-00259-RSP, D.I. 126 (01/15/15).

'946 Patent in *MTel I*. The accused devices that Samsung markets under the Galaxy S6, Note, PRO, and Tab brands run version 5 (Lollipop) of the Android operating system or another operating system with an email or messaging application that was not previously involved in *MTel I*. *See Acumed*, 525 F.3d at 1324 (Samsung has the burden of proving that the accused devices are "essentially the same," MTel does not have the burden of proving that they are not essentially the same).[13]

The purpose of the Kessler doctrine was not to bar the patent holder from ever suing the defendant again, nor was it even to bar a second suit against the defendant for infringing the previously asserted patent. Rather its purpose was to fill a particular "gap" in the doctrines of issue preclusion and claim preclusion. *Brain Life*, 746 F.3d at 1056 ("The Kessler Doctrine fills the gap between these preclusion doctrines."). The gap existed because, at that time, the doctrine of collateral estoppel required "mutuality of estoppel" and thus could be asserted only by someone who had been a party to the earlier lawsuit. *Id*. at 1057. Accordingly, if a device manufacturer was sued for infringement and won a judgment that its product was not covered by certain patent claims, the patent holder remained free to bring infringement suits against third parties, including retailers and customers of the device. *Id*. This would interfere with the manufacturer's ability to sell a product that had been adjudicated to be a non-infringing device. To solve this problem, "Kessler granted a limited trade right which is the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference." *Id*. at 1057 (internal quotes omitted, alteration in original).[14]

---

[13] Samsung misstates the relevant legal standard. See D.I. 22 at 8 ("MTel has alleged no relevant functional differences between email and messaging in Lollipop and any versions of the Android (or Windows, for that matter) software already found not to infringe."). Samsung must show that the accused products—not MTel's allegations—were "essentially the same" as the products accused in the prior litigation. *See Acumed*, 525 F.3d at 1324 (internal citation omitted).

[14] As *Kessler* purports to establish general federal common law, its validity is doubtful post *Erie RR. v. Tompkins*,
Continued on the next page

Therefore, the purpose and rationale for Kessler is tied to the premise that the manufacturer's product has been adjudicated to be non-infringing. In that circumstance, permitting free trade of the product by the manufacturer's retailers and customers makes sense, and the Kessler doctrine fulfills that purpose. But that purpose is not served when there has been no determination that the product is outside the scope of the patent's claims.

### III. MTEL'S MOTION FOR A NEW TRIAL AND SAMSUNG'S MOTION TO DISMISS SHOULD BE RESOLVED TOGETHER IN THIS LITIGATION.

The issues on which Samsung must produce evidence in order to prevail on the instant motion can effectively and efficiently be addressed on retrial in *MTel I*. It makes sense therefore to pull MTel's pending motion for retrial into this matter and to resolve both together.

### IV. CONCLUSION

This Court should deny Samsung's Motion to Dismiss and should strike all of Samsung's defenses based on all its theories of preclusion. To resolve all these issues and MTel's pending Motion for a New Trial efficiently and expeditiously, this Court should pull that motion from *MTel I* into this litigation and resolve both together.

Dated: June 1, 2015

Respectfully Submitted,

*/s/ Craig S. Jepson*
Craig S. Jepson
Texas State Bar No. 24061364
Daniel R. Scardino
Texas State Bar No. 24033165
Raymond W. Mort, III
Texas State Bar No. 00791308
Dustin L. Taylor
Texas State Bar No. 24088510
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel. (512) 474-2449
Fax (512) 474-2622

---

304 U.S. 64, 78 (1934) (Brandeis, J.) ("there is no general federal common law.").

cjepson@reedscardino.com
dscardino@reedscardino.com
rmort@reedscardino.com
dtaylor@reedscardino.com

Shannon Dacus
Texas State Bar No. 00791004
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
(903) 705-1117 (telephone & facsimile)
sdacus@dacusfirm.com

**ATTORNEYS FOR PLAINTIFF**
**MOBILE TELECOMMUNICATIONS**
**TECHNOLOGIES, LLC**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 1st day of June, 2015, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

*/s/ Craig S. Jepson*
Craig S. Jepson